UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:16-cr-20043-SLD-TSH-1 |
| JAMES ATWOOD, | ) ) ) |
| Defendant. | ) |

ORDER

Before the Court are Defendant James Atwood's pro se motion for compassionate release, ECF No. 179, counseled Amended Motion for Compassionate Release, ECF No. 184, and Motion for Leave to File Reply, ECF No. 188, and the United States' Motion to File Under Seal, ECF No. 185.  For the reasons that follow, the motions for compassionate release are DENIED, the motion for leave to file a reply is GRANTED, and the motion for leave to file under seal is GRANTED.

BACKGROUND

On May 11, 2018, Defendant James Atwood was sentenced to 210 months of imprisonment for conspiracy to distribute cocaine, distribution of cocaine, and use of a communication facility to facilitate a drug transaction.  *See* 2018 Judgment 1–2, ECF No. 107. His sentence was later vacated by the Seventh Circuit and his case remanded for resentencing. *United States v. Atwood*, 941 F.3d 883, 884 (7th Cir. 2019).  On remand, this Court sentenced Defendant to 156 months of imprisonment.  2020 Judgment 1–2, ECF No. 169.  He is currently serving his sentence at Federal Correctional Institution La Tuna in Anthony, Texas and is scheduled to be released July 12, 2027.  *See* Find an inmate, Fed. Bureau of Prisons ("BOP"), https://www.bop.gov/inmateloc/ (search for James Atwood) (last visited Feb. 2, 2021).  In light

of the ongoing COVID-19 pandemic, Defendant filed a pro se motion for an order reducing his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).  The Court appointed the Federal Public Defender to represent Defendant with respect to this motion.  *See* Nov. 16, 2020 Text Order.  An amended motion was filed by counsel on November 30, 2020.  The United States opposes Defendant's request for compassionate release.  Resp., ECF No. 187.  Defendant moves for leave to file a reply.

## DISCUSSION

### I. Legal Standard

"[A] judgment of conviction that includes . . . a sentence [of imprisonment] constitutes a final judgment" that can be modified in only certain enumerated circumstances.  18 U.S.C. § 3582(b).  As relevant here:

> [a] court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that (i) extraordinary and compelling reasons warrant such a reduction

and that a reduction is "consistent with applicable policy statements issued by the Sentencing Commission."  *Id.* § 3582(c)(1)(A).  "The defendant has the burden to show he is entitled to a sentence reduction."  *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020); *cf. United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.").

## II.     Analysis[1]

Defendant argues the following extraordinary and compelling reasons justify his release from prison:

> the exponential growth of COVID-19 within correctional facilities and around the world, the presence of COVID-19 at the Henry County Jail and the BOP facility Mr. Atwood is designated for, Mr. Atwood's multiple serious medical conditions, including chronic bronchitis and asthma (both which require medication to control), his hypertension (also controlled by medication), his weight, his anxiety and [post-traumatic stress disorder ("PTSD")], and his need to assist his mother with her medical needs.

Am. Mot. Compassionate Release 1.  He acknowledges that he did not first exhaust his administrative remedies but argues that because he was not in BOP custody when he filed his pro se motion, he was not required to do so.  *Id.* at 8–9.  And he argues that, considering the § 3553(a) factors, the time he has already served (along with a period of home confinement) may constitute a sufficient but not greater than necessary sentence to accomplish the goals of sentencing.  *Id.* at 23–27.  The United States argues the Court should deny Defendant's compassionate release request because he does not present an extraordinary and compelling

---

[1] Defendant has a direct appeal pending.  "Ordinarily, filing a notice of appeal divests a district court of jurisdiction."  *United States v. Ramer*, 787 F.3d 837, 838 (7th Cir. 2015).  The United States does not address the Court's jurisdiction.  Defendant argues that because "the issue on appeal is wholly separate from the issue brought before this Court, the Court has jurisdiction to hear this matter."  Am. Mot. Compassionate Release 10.  The Seventh Circuit recently decided a case involving a compassionate release motion filed while a direct appeal was pending.  *See United States v. Barrett*, No. 20-2130, 2021 WL 225799, at *1 (7th Cir. Jan. 22, 2021).  The district court concluded it had jurisdiction to resolve the defendant's compassionate release motion even though his direct appeal was pending because the "motion presented separate issues from his direct appeal" and denied the motion on the merits.  *Id.*  On appeal, the Seventh Circuit merely concluded that the district court had jurisdiction to deny the motion based on Federal Rule of Criminal Procedure 37(a), which allows a court considering a motion that it lacks authority to grant to defer considering the motion, deny the motion, or state that it would grant the motion if the court of appeals remanded or that the motion raises a substantial issue.  *Barrett*, 2021 WL 225799, at *1.  The Seventh Circuit's reliance on Rule 37(a) suggests the district court would not have had authority to grant the compassionate release motion.  In any case, the Court clearly has jurisdiction to deny Defendant's motion under Rule 37(a).

reason for release and because his release is unwarranted in light of the § 3553(a) factors. Resp. 1. It further argues that Defendant has not exhausted his administrative remedies. *Id.* at 13.[2]

### a. Exhaustion

The compassionate release statute contains an exhaustion requirement: before a defendant can bring his own motion for compassionate release, he must ask the warden of his facility to bring such a motion. 18 U.S.C. § 3582(c)(1)(A). The court may grant relief, if warranted, only "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* This is a mandatory claim-processing rule that must be enforced if properly invoked. *See United States v. Sanford*, No. 20-2445, 2021 WL 236622, at *3 (7th Cir. Jan. 25, 2021).

The parties agree that Defendant made no administrative request. The question here is whether, in light of the fact that he was not in BOP custody when he filed his first motion with the Court and therefore had no BOP warden to make a request to, he had to. Defendant cites to *Ross v. Blake*, 136 S. Ct. 1850 (2016), for the proposition that a defendant need not exhaust remedies that are not available. Am. Mot. Compassionate Release 8. But that case involved the Prison Litigation Reform Act's exhaustion requirement, which specifically provides that an inmate must exhaust all "administrative remedies as are available," 42 U.S.C. § 1997e(a). This statute does not contain similar language, *see* 18 U.S.C. § 3582(c)(1)(A), so *Ross* does not dictate

---

[2] The United States also argues that the Court should deny the motion because Defendant has not identified a suitable release plan. Resp. 18–19. But the United States Probation Office for the Central District of Illinois found Defendant's plan suitable. Mem. 2, ECF No. 182. It did note that the United States Probation Office for the District of Arizona would still have to accept Defendant's case for supervision, but that is not akin to finding his release plan unsuitable. A request for another office to accept Defendant's case for supervision would likely not be made until after there was a court order releasing Defendant.

the result Defendant claims it does.  Defendant also argues that "numerous courts have held that when a defendant is serving a federal sentence of imprisonment in a non-BOP facility the inmate need not exhaust administrative remedies as it is impossible to do so," citing district court cases. Am. Mot. Compassionate Release 8–9.  But, as Defendant acknowledges, in those cases, the United States waived its reliance on the exhaustion requirement or conceded exhaustion.  *Id.* at 9.[3]  When the United States waives or concedes exhaustion, the court need not rule on the issue. *See United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020) ("Failure to exhaust administrative remedies is an affirmative defense, not a jurisdictional issue that the court must reach even if the litigants elect not to raise it." (citations omitted)).  Indeed, in the one reported case Defendant cites, the court did not specifically hold that exhaustion was not required; it merely noted that the United States conceded the exhaustion requirement.  *See United States v. Burrus*, No. 19-284, 2020 WL 3799753, at *3, 4 (W.D. Pa. July 7, 2020).

The Court was not provided with legal support addressing the question at hand—whether a defendant serving a federal sentence who is not in BOP custody, and therefore has no BOP warden to submit a request to, is barred from seeking compassionate release—by either side. Even setting aside exhaustion, however, the Court would deny the motion on the merits.

   b.  **Merits**

The compassionate release statute directs the Court to make three considerations: 1) whether extraordinary and compelling reasons warrant a sentence reduction; 2) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission"; and 3) whether a reduction would be consistent with the

---

[3] That seems to be the United States' general practice.  *See United States v. Russell*, No. 1:14-CR-6-HAB, 2020 WL 2989160, at *4 n.3 (N.D. Ind. June 4, 2020) (citing cases supporting the proposition that the United States "has regularly waived the exhaustion requirement to reach the merits" when a defendant is not in BOP custody).

factors listed in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). The Seventh Circuit, however, recently held that there is no applicable policy statement with which a sentence reduction must be consistent. *See Gunn*, 980 F.3d at 1180.[4]

The parties dispute whether Defendant has set forth extraordinary and compelling reasons for release. While the United States concedes that "[i]f an inmate has a chronic medical condition that has been identified by the [Centers for Disease Control and Prevention ("CDC")] as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition might present an 'extraordinary and compelling reason,' allowing compassionate release under the statute," it argues that Defendant has no such medical condition. Resp. 15–16 (footnote omitted). For instance, it argues that Defendant's medical records do not support that he has chronic bronchitis, moderate-to-severe asthma, or hypertension, *see* Resp 5–7, which are all conditions the CDC recognize increase or may increase an individual's risk for severe illness from COVID-19, CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Feb. 1, 2021). Defendant submitted no medical evidence in support of his motion and offered nothing in his reply to address the United States' arguments. After reviewing Defendant's BOP medical records, the Court agrees

---

[4] Despite filing its response after *Gunn* was decided, the United States argues that "[s]ection 3582(c)(1)(A) conditions judicial relief on fidelity to the applicable policy statement, which appears at [United States Sentencing Guidelines Manual] § 1B1.13." Resp. 14. And the bulk of its argument on extraordinary and compelling reasons focuses on whether Defendant has established that extraordinary reasons consistent with the policy statement warrant his release. *See, e.g., id.* at 14–15. The only nod toward the Seventh Circuit's ruling in *Gunn* is a footnote in which the United States writes: "In light of the statutory command that any sentence reduction be 'consistent with applicable policy statements . . . ,' and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement *is persuasive authority* with regard to motions filed by defendants as well." *Id.* at 14–15 n.6 (emphasis added) (quoting 18 U.S.C. § 3582(c)(1)(A)). It appears to acknowledge in this footnote that the policy statement is merely persuasive, not controlling.

Defendant has not established that he has these medical conditions or, in the case of his asthma, that it is moderate or severe.

Defendant also contends that his PTSD and anxiety compromise his immune system, making him more vulnerable to severe infection. Am. Mot. Compassionate Release 4. The United States acknowledges that Defendant has PTSD but notes that the CDC do not recognize this as a risk factor for severe illness from COVID-19. Resp. 17. Defendant argues that "[c]ourts have found that mental illness, particularly PTSD, has been shown to impair immune function and heighten vulnerability to viral infection." Am. Mot. Compassionate Release 4. He cites one case, *United States v. Indarte*, No. CR17-5554 BHS, 2020 WL 6060299 (W.D. Wash. Oct. 14, 2020). Am. Mot. Compassionate Release 4. In that case, the defendant argued he had shown extraordinary and compelling reasons for release because of his chronic medical conditions which he argued increased his vulnerability to severe complications from COVID-19. *Indarte*, 2020 WL 6060299, at *3. The court recognized that his obesity increased his risk for severe illness from COVID-19 and noted that the defendant had "present[ed] evidence that the mental illness[es] [he] suffers from have been shown to impair immune function and heighten vulnerability to viral infection." *Id.* The United States conceded that the defendant's obesity constituted an extraordinary and compelling reason. *Id.* The court concluded that the defendant's "medical conditions, taken together, increase his risk for a severe or deadly infection of COVID-19" and therefore found he had established extraordinary and compelling reasons for release. *Id.* at *4. The court did not discuss the evidence the defendant submitted regarding his mental illnesses in any detail, so the Court will not rely on *Indarte* to find that Defendant's PTSD and anxiety increase his risk

7

for severe illness from COVID-19.  Defendant did not submit any evidence himself to support this contention, so the Court concludes he has not met his burden to establish that his PTSD and anxiety constitute or contribute to an extraordinary and compelling reason for release.

There is one medical issue the United States' response does not address: Defendant's representation that he is overweight, Am. Mot. Compassionate Release 15, which is supported by his BOP medical records.  The CDC also recognize that being overweight might increase an individual's risk for severe illness from COVID-19.  *See* People with Certain Medical Conditions, *supra*.  The United States also failed to respond to Defendant's contention that his need to care for his mother contributes to his extraordinary and compelling reasons for release.

Even assuming Defendant has established an extraordinary and compelling reason for release,[5] the Court would deny the motion after consideration of the § 3553(a) factors. These factors include: "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," *id.* § 3553(a)(2)(A); "the need for the sentence imposed to afford adequate deterrence to criminal conduct," *id.* § 3553(a)(2)(B); and "the

---

[5] There may be reason to question whether either of the remaining circumstances constitute extraordinary and compelling reasons for release.  The United States implies that if a condition is on the CDC's list of conditions which might increase risk for severe illness from COVID-19 (as opposed to the list of conditions which do increase risk), then it does not constitute an extraordinary and compelling reason for release. *See* Resp. 17.   And the Court is not inclined to find extraordinary and compelling reasons for release exist due to an ill family member unless a defendant provides evidence that he is the only available caregiver for someone who is unable to care for themselves or a similarly uncommon circumstance.  *Cf.* United States Sentencing Guidelines § 1B1.13 cmt. n.1(C)(ii) (providing that extraordinary and compelling reasons for release exist if the defendant's spouse or registered partner becomes incapacitated and the defendant is the only available caregiver for the spouse or registered partner).

need for the sentence imposed to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(C).

The Court re-sentenced Defendant only a few months ago, during the pandemic; the circumstances under which the Court determined a 156-month sentence was sufficient but not greater than necessary have not changed. Defendant was convicted of conspiring to deal cocaine in the Kankakee, Illinois area between late 2014 and early 2015. Eighth Revised Presentence Investigation Report ("PSR") ¶¶ 11–18, ECF No. 160. He was a leader and manager of the conspiracy: he had the source of supply, he made decisions about financial matters, and he arranged drug transactions. *Id.* ¶¶ 19, 30; Re-Sentencing Hr'g Tr. 157:3–158:1, ECF No. 177.

Defendant had been a drug dealer throughout most of his adult life. Re-Sentencing Hr'g Tr. 200:14-16. He had two prior convictions for delivery of cocaine. PSR ¶¶ 44, 47. For the later conviction, he was sentenced to six years in the Illinois Department of Corrections. *Id.* ¶ 47. And he was on parole from that case when he committed the instant offense. *Id.* ¶¶ 47, 51. He had violated other terms of court supervision too. *See id.* ¶ 41 (noting that he violated parole imposed for a mob action conviction); *id.* ¶ 44 (noting that he violated parole for his first cocaine delivery conviction); *id.* ¶ 46 (noting that he violated probation imposed for a possession of a weapon by a felon conviction). And he was considered a career offender under the Sentencing Guidelines, U.S. Sentencing Guidelines Manual § 4B1.1. *Id.* ¶ 33; *see also* Re-Sentencing Hr'g Tr. 207:4–9 ("[T]his is the type of criminal history and the type of background and the type of personal history and characteristics that Congress was trying to . . . address with a career offender guideline."). Moreover, the Court found that

Defendant had served in a leadership role of a gang involved in violent activity. Re-Sentencing Hr'g Tr. 200:23–201:10. Defendant's significant, violent criminal history and repeated violation of court supervision suggests that placing him on a term of home confinement or supervised release will not deter him from committing future crimes or protect the public.

Defendant argues that he "is clearly taking advantage of educational and vocational opportunities while in the BOP." Am. Mot. Compassionate Release 24. But the Court acknowledged at the re-sentencing hearing that Defendant was "already doing the things that we hope somebody does when they start to rehabilitate." Re-Sentencing Hr'g Tr. 212:10–11. It acknowledged that he has pursued programming and an apprenticeship and took that into consideration in fashioning the 156-month sentence. *Id.* at 213:3–10.

The Court again commends Defendant for participating in programming and making efforts to rehabilitate himself, but the seriousness of this offense and Defendant's criminal history weigh against granting Defendant compassionate release. He has served approximately 4.5 years of his sentence. Even with good time credits, he is not scheduled to be released for another 6.5 years. He argues that this is not "an obscene reduction." Am. Mot. Compassionate Release 23. But the Court found, as recently as in September 2020, that the time Defendant had already served was not sufficient to reflect the seriousness of the offense, to protect the public, to deter criminal conduct, or to promote respect for the law. Releasing Defendant now would similarly undermine these interests. The request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is therefore denied.

**CONCLUSION**

Accordingly, Defendant James Atwood's pro se motion for compassionate release, ECF No. 179, and counseled Amended Motion for Compassionate Release, ECF No. 184, are DENIED. Defendant's Motion for Leave to File Reply, ECF No. 188, is GRANTED. The Clerk is directed to file the Reply, ECF No. 188-1, on the docket. The United States' Motion to File Under Seal, ECF No. 185, is GRANTED because Defendant's medical records should be sealed.

Entered this 2nd day of February, 2021.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE